## TUFTS' ADMINISTRATOR vs. TUFTS.

After *ten years* from the time of *docketing,* a judgment ceases to be a *lien* on the real estate of the defendant in the judgment *as against* BONA FIDE *purchasers or subsequent incumbrancers,* and lands purchased *after* the ten years are elapsed, are held free and discharged of the lien.
So also lands purchased in good faith from the defendant in the judgment, *during* the running of the ten years, are held freed and discharged of the lien, if there be no sale within the ten years, although the purchases be made with *knowledge* of the judgment.
The ten years commence running at the time of the original docket, and the lien is not saved by subsequent revivals by *scire facias.*
An execution upon a judgment more than ten years old will not be stayed, unless the application for that purpose be made *by purchasers or incumbrancers;* and when made by a purchaser, *it seems,* that the court would require all moneys remaining due to the defendant to be paid to the plaintiff in the judgment.
Where a motion was made for a perpetual stay, the notice for which was subscribed by an attorney, *as attorney for the purposes of the motion,* and no purchaser or incumbrancer was an actor in the proceeding, the motion was denied, and the attorney ordered to pay the costs.

LIEN of judgment. A judgment was docketed against the defendant 22d March, 1825, which was revived by *scire facias* on the 13th May, 1826, and again on the 11th July, 1836. An execution was issued against the real estate of which the defendant was seized on the day of the original docket. At that time he was the owner of a large real estate, but since then and up to the [622] first day of February, 1836, had made extensive sales in small parcels to various persons, some of whom have made valuable improvements, and others have transferred their interests to subsequent purchasers. The sheriff has advertised the lands sold by the defendant, for sale under the execution. A motion was now made for a perpetual stay of the execution as to all the lands sold by the defendant. The motion was founded upon affidavits of the *defendant* in the judgment, and one *E. Pomeroy,* detailing the conveyances made by the defendant; but it was not shown that Pomeroy was *interested as a purchaser.* It was claimed that the purchases were all *bona fide,* but it was not denied that the

---

(*a*) Decided at Oct. term, 1836.

Tufts' Administrator *v.* Tufts.

purchasers had actual notice of the judgment. The notice of the motion was subscribed, "A. B., attorney for the purposes of the motion."

*M. T. Reynolds*, for the motion.

*N. N. Hall*, contra.

*By the Court*, Cowen, J. Most of the deeds, I perceive, were given by the defendant, from the fall of 1825, through the several years, up to the 22d March, 1835, when the ten years expired. The deeds executed since that time are of trifling consequence. Not a single purchaser has denied that he had actual notice of the judgment.

I find it perfectly well settled by two adjudged cases, which appear to have been decided on full deliberation, that incumbrancers whose rights accrue after ten years from the entry of the judgment stand clear of the lien. (*Little* v. *Harvey*, 9 *Wendell*, 157. *Graff* v. *Kip*, 1 *Edw. Ch. R.* 619.) In the first of these cases there was an offer to show actual knowledge of the judgment at the time when the adverse incumbrance (a mortgage) attached, and that the mortgagee knew that the judgment remained unpaid. This was holden to be immaterial. Sutherland, J., said, the court entertained no doubt that he must still be considered a *bona fide* mortgagee within the meaning of the statute; and he added, "no doubt is entertained that all purchasers are to be considered pur- [623] chasers in good faith, within the meaning of this act, except those who purchase with an actual fraudulent intent. Mere notice of the prior judgment, either actual or constructive, will not render the purchase *mala fide*." In *Graff* v. *Kip*, the vice-chancellor did not stop to inquire of notice. These cases, in connection with that *Ex parte the Peru Iron Company*, (7 *Cowen*, 540,) also settle the point that the ten years must be reckoned from the docketing of the principal judgment, which cannot be saved by revivals on intermediate writs of *scire facias*. These neither create a new nor save the old lien. It can only be saved by an actual sale under execution within the ten years, or a newly docketed judgment previous to the purchases or incumbrances, which come in for a preference. (1 *Ewd. Ch. R.* 620.) On these cases I certainly consider the present case disposed of in respect to the few among the numerous purchasers whose conveyances bear date since the 22d of March, 1835.

Are those of a previous date comprehended? Their rights stand upon the former statute, (1 *R. L.* 500, § 1,) which enacts that "all judgments hereafter to be rendered shall cease to be a lien or incumbrance on any real estate as against *bona fide* purchasers or subsequent incumbrancers, by mortgage, judgment, or otherwise, from and after ten years from the time the same shall be docketed." The words as to both purchasers and incumbrancers, are, perhaps, open to the criticism that "from and after" have reference to the date of the purchase or incumbrance, and not merely the ceasing of the lien. The act may be read thus: "The judgment lien shall cease, as to purchasers and subsequent incumbrancers, whose rights shall accrue from and after ten years from the docket." The equivoque is avoided by the new act, (2 *R. S.* 359, § 4.) Here the words are: "From and after ten years from the time of docketing every such judgment, it shall cease to bind or be a charge upon such property as against purchasers in good faith, and as against incumbrancers subsequent to such judgment, by mortgage, judgment, decree, or otherwise." I think this accords with the correct construction of the former act; which, as was observed in *Little* v. *Harvey*, was intended as a short statute of limitation in favor of all purchasers or [624] incumbrancers whose interests arise at any time after the docket. The question as to *bona fides* is the same as it was in the cases cited. But the case of *Roe* v. *Stewart*, (5 *Cowen*, 294,) settles the construction of the statute of 1813, as to incumbrancers. The court there protected a subsequent judgment creditor whose right accrued within the ten years.

The remaining question is, not whether we have power, for of that there is no doubt; (*Lansing* v. *Vischer*, 1 *Cowen*, 431;) but whether we ought to interfere,

Tufts' Administrator *v.* Tufts.

and to what extent, in arresting this execution. The *purchasers do not appear as parties ;* that is to say, nothing appears affirmatively that they have interested themselves in this motion. Mr. Enos Pomeroy collects the deeds from the clerk's office and details them in his affidavit ; and Thomas Tufts himself, (the defendant,) in an affidavit, gives an account of other conveyances. On these Mr. Skinner signs his name to the notice as *attorney for the purposes of this motion.* How many other deeds there may be, we do not know. It is said we have an equitable control over our judgments and executions, and are to stay proceedings where we see that *bona fide* purchasers will be harassed by our process, and a multitude of suits engendered ; that sitting on the equity side, our office is to proceed as the chancellor would in such a matter. All that might very properly be said of a case wherein we were sure of our ground. We are now invited by a very short process to cut short all proceedings on this execution, it is said, against *bona fide* purchasers. Who asks us to do that? Not a man has connected himself with these papers, by affixing his name as a party or authorizing an attorney to appear for him. The defendant himself, the last man who has a right to interfere, and Mr. Pomeroy, a stranger, make affidavits. Mr. Pomeroy, if he be interested as a purchaser, does not allow his name to appear as a party. All is anonymous. There is no person, unless it be the attorney, who stands responsible upon these papers even for costs It would not be a very judicious performance of chancery duties, to make a decree in favor of parties who will not even suffer themselves to be named. They [625] are called *bona fide* purchasers ; I think they appear to be so within the statute ; but I am by no means clear that proving themselves so in the abstract entitles them to an unqualified stay of proceedings even in respect to themselves. For aught we know they may yet be indebted to Tufts for the purchase money of this land. If they are, or for any part of it, I am free to say that I should hardly be willing, whatever be their *bona fides,* to leave them entirely free to pay over the money to Thomas Tufts, who owes this large judgment to the estate of his deceased brother. We might stay the execution, on their paying the balance to the plaintiff. The course of chancery is to compel a purchaser to pay the previous incumbrancer all he owes after notice, though he may have purchased without any information in the first instance. (*Frost* v. *Beekman,* 1 *Johns. Ch. R.* 288, 301, *and the cases there cited.*) The defendant may be insolvent, and a strong equity may arise that before the purchasers are relieved a decree should be had against them and the defendant, arresting future payments and applying them to the discharge of this judgment. Nothing of that kind can be done here, for they are not before the court ; nor is the defendant. If they have paid in full, they do not come to show payment. In *Lansing* v. *Vischer,* (6 *Cowen,* 431,) the purchaser had paid in full before notice, and applied on his own affidavit. The statute has gone great lengths in the protection of purchasers, but I am persuaded it never meant to excuse the defendant himself against the full force of the lien, nor is it any injury to purchasers that the current of their future payments should be turned. I do not know that they owe anything ; but, as remarked on the argument, it is somewhat remarkable that the defendant himself should be left alone to make this application. If there be anything due, and we now stop the execution perpetually, as we are asked to do, the application is *pro tanto* for the benefit of the defendant alone. A sale on this execution will not interfere in the least with the power of the purchasers to interpose this statute of limitations as their defence to actions of ejectment in favor of purchasers from the sheriff. That was done in *Little* v. *Harvey.* The plaintiff may be [626] desirous to re-examine the construction of the statute on writ of error.

Chancery always demands a plain case before it will interfere by the wholesale and stop legal proceedings. If there be doubt, it will at least send the case to a court of law, and have it tried and re-tried till doubts are removed. This judgment is large. Something like $50,000 is now due upon it. The real

estate of the defendant, which was originally bound by it, has been in a constant course of sale, in small parcels, for ten years and more, to purchasers who it is said are now entitled to protection, but whose cases may present a great variety of equitable shades, entitling them to a greater or less degree of protection.

On the whole, this is not that strong, clear, and practicable case which induces me to think it should, by this motion, be withdrawn from the regular course of law and equity. If the purchasers are desirous to prevent a multiplicity of suits, the chancellor will examine their case on equitable principles, provided they will make themselves parties to a regular bill; but I doubt his giving them any relief, if he finds they have been colluding with Tufts, fraudulently to withdraw funds from the payment of an honest judgment.

As this matter stands here, the motion must be denied with costs.

The attorney subscribes himself on behalf of the *motion.* The motion cannot pay the costs. I think the rule must be against him personally.